ACCEPTED
01-15-00918-CV
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 10:01:30 PM
CHRISTOPHER PRINE
CLERK

**No. 01-15-00918-CV**

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/24/2015 10:01:30 PM
CHRISTOPHER A. PRINE
Clerk

**In Re UNION PACIFIC RAILROAD COMPANY,**

*Relator*

Original Proceeding from Cause No. 2014-23177
In the 125th District Court of Harris County, Texas

**RESPONSE OF REAL PARTIES IN INTEREST (DONALD AND MARY TRICHEL, INDIVIDUALLY AND AS PERMANENT CO-GUARDIANS OF THE PERSON AND ESTATE OF NICHOLAS TRICHEL, INCAPACITATED) TO PETITION FOR WRIT OF MANDAMUS**

Levon G. Hovnatanian
TBN: 10059825
*hovnatanian@mdjwlaw.com*

Dale Jefferson
TBN: 10607900
*jefferson@mdjwlaw.com*

Raymond M. Kutch
TBN: 24072195
*kutch@mdjwlaw.com*

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**
808 Travis, 20th Floor
Houston, Texas 77002
(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

Vuk S. Vujasinovic
TBN: 00794800
*Vuk@vbattorneys.com*
Brian Beckcom
TBN: 24012268
*Brian@vbattorneys.com*
**VB ATTORNEYS, PLLC**
6363 Woodway Drive, Suite 400
Houston, Texas 77057
(713) 224-7800 – Telephone
(713) 224-7801 – Facsimile

# **TABLE OF CONTENTS**

**PAGE**

TABLE OF CONTENTS.........................................................................................................i

INDEX OF AUTHORITIES............................................................................................. iii

STATEMENT OF THE CASE...........................................................................................vi

ISSUES PRESENTED.................................................................................................... viii

INTRODUCTION .............................................................................................................1

STATEMENT OF FACTS .................................................................................................1

I.     HAMPTON SEVERELY INJURED NICHOLAS TRICHEL WHEN HIS 18-WHEELER CRASHED INTO TRICHEL'S PASSENGER CAR. ..................................................................................................................1

II.    UNION PACIFIC WITHHELD WITNESS STATEMENTS OF HAMPTON AND HIS CO-WORKER, WILSON. .......................................2

III.   THE RESPONDENT CAREFULLY CONSIDERED UNION PACIFIC'S EVIDENCE, CONDUCTED AN *IN CAMERA* REVIEW OF THE WITNESS STATEMENTS, AND DETERMINED THEY WERE NOT PRIVILEGED. ...................................................................2

SUMMARY OF THE ARGUMENT .................................................................................3

ARGUMENT .....................................................................................................................6

I.     STANDARD OF REVIEW ........................................................................6

II.    THE ATTORNEY-CLIENT PRIVILEGE IS CONSTRUED NARROWLY AND THE BURDEN OF DEMONSTRATING ITS APPLICABILITY IS CARRIED BY ITS PROPONENT. ...........................7

III.   UNION PACIFIC MUST PROVE THE WITNESS STATEMENTS WERE MADE FOR THE PURPOSE OF FACILITATING THE RENDITION OF LEGAL SERVICES TO THE CLIENT............................9

IV.   HAMPTON AND WILSON DO NOT QUALIFY AS REPRESENTATIVES OF UNION PACIFIC. ...........................................13

i

V.     IN PARTICULAR, WILSON WAS MERELY A UNION PACIFIC EMPLOYEE WHO WITNESSED AN ACCIDENT. ..................................15

VI.    ANY COMMUNICATIONS BETWEEN UNION PACIFIC, HAMPTON AND WILSON WERE NOT CONFIDENTIAL. ...................17

VII.   UNION PACIFIC WAIVED ITS CLAIM FOR PRIVILEGE WHEN IT KNOWINGLY WITHHELD THE WITNESS STATEMENTS FROM PRODUCTION. ...............................................................20

VIII. RELATOR FAILED TO PROVIDE THE RESPONDENT WITH THE AUDIO TAPES OF THE WITNESS STATEMENTS IT SEEKS TO EXCLUDE FROM DISCOVERY. .......................................22

CONCLUSION AND PRAYER ..........................................................24

CERTIFICATE OF COMPLIANCE .....................................................25

CERTIFICATE OF SERVICE ............................................................26

# INDEX OF AUTHORITIES

**PAGE**

**Cases**

*Brown & Root U.S.A., Inc. v. Moore*,
731 S.W.2d 137 (Tex. App.—Houston [14th Dist.] 1987,
no writ) ...................................................................................................12

*Cameron Cnty. v. Hinojosa*,
760 S.W.2d 742 (Tex. App.—Corpus Christi 1988,
orig. proceeding) .....................................................................................17

*Canadian Helicopters Ltd. v. Wittig*,
876 S.W.2d 304 (Tex. 1994)..................................................................6, 7

*Dikeman v. Snell*,
490 S.W.2d 183 (Tex. 1973)......................................................................17

*Gordon v. Blackmon*,
675 S.W.2d 790 (Tex. App.—Corpus Christi 1984,
orig. proceeding) .......................................................................................7

*Gulf Oil Corp. v. Fuller*,
695 S.W.2d 769 (Tex. App.—El Paso 1985,
no writ) ...................................................................................................17

*Harper & Row Publishers, Inc. v. Decker*,
423 F.2d 487 (7th Cir. 1970),
*aff'd per curiam*, 400 U.S. 348 (1971)................................................13

*Huie v. DeShazo*,
922 S.W.2d 920 (Tex. 1996).....................................................8, 11, 16

*In re Auclair*,
961 F.2d 65 (5th Cir. 1992).......................................................................17

*In re E.I. DuPont de Nemours & Co.*,
136 S.W.3d 218 (Tex. 2004)........................................................................5

*In re JDN Real Estate-McKinney L.P.*,
211 S.W.3d 907 (Tex. App.—Dallas 2006,
orig. proceeding) ...............................................................................17, 18

*In re Learjet, Inc.*,
59 S.W.3d 842 (Tex. App.—Texarkana 2001,
orig. proceeding) ...............................................................................9

*In re Monsanto Co.*,
998 S.W.2d 917 (Tex. App.—Waco 1999,
no pet.)...........................................................................................13

*In re Tex. Farmers Ins. Exch.*,
990 S.W.2d 337 (Tex. App.—Texarkana 1999,
no pet.).................................................................................4, 11, 12

*In re W & G Trucking, Inc.*,
990 S.W.2d 473 (Tex. App.—Beaumont 1999,
orig. proceeding) ...............................................................................9

*Johnson v. Fourth Court of Appeals*,
700 S.W.2d 916 (Tex. 1985) .............................................................6

*MessagePhone, Inc. v. SVI Sys.*,
1998 WL 874945 (N.D. Tex. Dec. 8, 1998) ......................................8

*Nat'l Tank Co. v. Brotherton*,
851 S.W.2d 193 (Tex. 1993)............................................................11

*Neville v. Brewster*,
163 Tex. 155, 352 S.W.2d 449 (1961)...............................................7

*Pat Walker & Co. v. Johnson*,
623 S.W.2d 306 (Tex. 1981)..............................................................7

*State v. Lowry*,
802 S.W.2d 669 (Tex. 1991)..............................................................8

*Stringer v. Eleventh Court of Appeals*,
720 S.W.2d 801 (Tex. 1986)............................................................12

*Tex. Dep't of Mental Health & Mental Retardation v. Davis*,
775 S.W.2d 467 (Tex. App.—Austin 1989,
no writ) .............................................................................................8

*U.S. Ins. Group v. Lloyd*,
  01-90-00754-CV, 1990 WL 238301
  (Tex. App.—Houston [1st Dist.] Dec. 12, 1990,
  no writ) ......................................................................................................8

*Upjohn Co. v. United States,*
  449 U.S. 383 (1981) ...................................................................................4, 16

*Varo, Inc. v. Litton Sys.*,
  129 F.R.D. 139 (N.D. Tex. 1989) ....................................................................8

*Walker v. Packer*,
  827 S.W.2d 833 (Tex.1992)
  (orig. proceeding) ............................................................................................6

**Statutes**

FED. R. EVID. 503 ..............................................................................................9

TEX. R. EVID. 503............................................................................3, 8, 9, 17

TEX. R. EVID. 503(b) .........................................................................................8

TEX. R. EVID. 503(d)(5).....................................................................................18

**Rules**

TEX. R. CIV. P. 192 ...........................................................................................3

# STATEMENT OF THE CASE

*Nature of the case:*     This mandamus proceeding was brought by Relator, Union Pacific Railroad ("Union Pacific"), who is a defendant in a case involving an auto collision between a passenger car driven by Nicholas Trichel ("Trichel") and an 18-wheeler leased by Union Pacific and driven by Jeremey Ray Hampton ("Hampton"). [MR: 34]. Trichel's parents (collectively, "the Trichels") filed this lawsuit on behalf of Nicholas's estate and person and in their individual capacities. [MR: 1-29]. The Trichels assert negligence, gross negligence, and negligence *per se* claims against Union Pacific and Hampton. [MR: 34].

*Respondent:*     Judge Kyle Carter, of the 125th Judicial District Court of Harris County, Texas.

*Trial Court Disposition*:     Union Pacific Claims Supervisor William J. Green ("Green") audio recorded two witness statements of Jeremey Ray Hampton and James Wilson ("Wilson") two days after the accident. [MR: 115-16]. Hampton was driving the tractor trailer that crashed into Trichel's personal automobile. [MR: 34]. Wilson was driving a separate truck behind Hampton at the time of the accident. [MR: 44]. Union Pacific's outside counsel Marcy Rothman ("Rothman") attended and listened to Hampton and Wilson give their statements to hear what their impressions were at the time of how the accident occurred. [MR: 120].

Union Pacific did not object, nor disclose the existence of Hampton or Wilson's witness statements when the Trichels requested Union Pacific produce witness statements in its possession over a year and a half ago. [MR: 237-251].

During Green's October 22, 2015 deposition, he disclosed for the first time that he recorded Hampton and Wilson's statements, and he had not produced them on behalf of Union Pacific. [MR: 115-16; Transcript]. The following day, Union Pacific objected and argued to the

vi

respondent that the interviews were protected from disclosure by the attorney-client privilege. [MR: 43-50; 124-27; Transcript]. The respondent reviewed Union Pacific's affidavits and conducted an in camera review of a transcript of the recorded witness statements. [MR: 262; Transcript].

On October 27, 2015, the respondent entered an order overruling Union Pacific's objections and ordered Relator to produce the recorded witness statements of Hampton and Wilson immediately. [RRIP: 64-64].

## ISSUES PRESENTED

1. Did the respondent clearly abuse his discretion in ordering Union Pacific to produce the recorded witness statements of Hampton and Wilson taken two days after the crash?

**TO THE HONORABLE JUSTICES OF THE FIRST COURT OF APPEALS:**

Real Parties in Interest, Donald and Mary Trichel, Individually and as Permanent Co-Guardians of the Person and Estate of Nicholas Trichel, Incapacitated, respond to the petition for writ of mandamus as follows:

## INTRODUCTION

The petition for writ of mandamus challenges an October 27, 2015 order overruling Union Pacific's objections and ordering the immediate production of the recorded witness statements of Hampton and Wilson. An analysis of the respondent's order reveals that the respondent did not abuse his discretion and mandamus relief should be denied.

## STATEMENT OF FACTS

### I. HAMPTON SEVERELY INJURED NICHOLAS TRICHEL WHEN HIS 18-WHEELER CRASHED INTO TRICHEL'S PASSENGER CAR.

A Union Pacific 18-wheeler driven by defendant Hampton struck a Ford Mustang driven by 26-year-old Nicholas Trichel. [MR: 34]. As a result of the crash, Trichel suffered catastrophic injuries. [MR: 34]. On April 25, 2014, Trichel's parents, Donald and Mary Trichel, filed the underlying lawsuit, alleging that Hampton and Union Pacific were negligent, grossly negligent, and negligent *per se*. [MR: 1, 3-4].

1

## II. UNION PACIFIC WITHHELD WITNESS STATEMENTS OF HAMPTON AND HIS CO-WORKER, WILSON.

On October 22, 2015, Union Pacific Claims Supervisor Green testified that he took tape-recorded statements of Hampton and Wilson (a witness who was driving behind Hampton) two days after the accident happened. [MR: 115-16; RRIP: 44-57]. Union Pacific's attorney Rothman sat in the room when Green took their recorded witness statements. [MR: 120].

Neither Union Pacific nor Hampton objected or asserted any privilege when the Trichels requested the witness statements during written discovery over a year and half ago. [MR: 237-51; RRIP: 44-57]. Union Pacific did not disclose the existence of the recorded statements in a privilege log or supplement discovery prior to Green's October 22, 2015 deposition. [MR: 115-16].

## III. THE RESPONDENT CAREFULLY CONSIDERED UNION PACIFIC'S EVIDENCE, CONDUCTED AN *IN CAMERA* REVIEW OF THE WITNESS STATEMENTS, AND DETERMINED THEY WERE NOT PRIVILEGED.

On October 23, 2015, the respondent conducted a hearing in which Union Pacific offered a freshly prepared affidavit of Green testifying that he believed Hampton and Wilson's witness statements had been transcribed and provided to Rothman, but that in preparing for his deposition he "determined that the recordings had not been transcribed and had not been provided to anyone." [MR: 115-16; RRIP: 48-49]. Green implies he simply forgot about the witness

2

statements, despite the Trichels issuing discovery with their original petition—only eight days after Green recorded the statements. [MR: 115-16; 237-51; RRIP: 48-49]. Green also forgot to produce the statements in Union Pacific's response to the Trichels' follow-up request for production, which specifically sought audio recordings. [MR: 248-251].

After hearing argument from counsel and considering affidavits prepared for the benefit of Union Pacific, the respondent stated he would review the statements *in camera* to determine if they were attorney-client privileged communications. [RRIP: 50, 52-57]. Union Pacific provided a transcript of the witness statements to the respondent. [RRIP: 62]. On October 27, 2015, the respondent ruled the witness statements were discoverable and overruled Union Pacific's assertion of attorney-client privilege. [MR: 262]. The order required Union Pacific to produce the transcripts and recorded witness statements immediately. [MR: 262].

## SUMMARY OF THE ARGUMENT

The petition for writ of mandamus challenges the October 27, 2015 order overruling Relator's assertion of attorney-client privilege for the two recorded witness statements. Texas Rule of Civil Procedure 192 requires the production of witness statements. Relator alleges the witness statements are protected from disclosure under Texas Rule of Evidence 503 because Hampton and Wilson were "representatives" of Union Pacific.

3

Rothman's presence in the same room as Hampton and Wilson does not automatically make all communications privileged. A communication is not privileged merely because it is uttered by or to a lawyer. Nor have Texas courts ever embraced the proposition that otherwise relevant, non-privileged, factual information is immune from disclosure simply because an attorney sat in the same room while a witness provided a statement. *In re Tex. Farmers Ins. Exch.*, 990 S.W.2d 337, 341 (Tex. App.—Texarkana 1999, no pet.); *see also Upjohn Co. v. United States,* 449 U.S. 383, 395-66 (1981) (noting that attorney-client privilege does not extend to the disclosure of underlying facts, but merely to the disclosure of attorney-client communications).

The respondent did not abuse his discretion in ordering the production of Hampton and Wilson's statements because they are not attorney-client communications protected by the attorney-client privilege. Union Pacific's argument fails because it did not establish the recorded witness statements were attorney-client communications. To do so, Union Pacific must establish the witness statements were confidential communications made for the purpose of facilitating the rendition of professional legal services between or amongst the client, lawyer, and their representatives. Relator fails because there is no evidence Rothman rendered legal services to Hampton or Wilson during their witness

4

statements. Nor has Relator established the witness statements were intended to be confidential communications.

Moreover, Relator must establish the attorney-client privilege extends to Hampton and Wilson. Texas courts require that when a party alleges its employee communications are protected by the attorney-client privilege, 1) the employee's superior must direct that the communication be made, and 2) the subject matter upon which the attorney's advice is sought by the company and dealt with in the communication is the performance by the employee of the employee's duties of his employment. *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 226 n.3 (Tex. 2004). The examination is relevant because Relator bears the burden to identify Hampton and Wilson's superior who directed their witness statements be given, and to demonstrate that their duties as employees were the reason Union Pacific sought an attorney's advice.

Additionally, Rothman's initiated joint representation of Union Pacific and Hampton renders communications made jointly to Rothman non-privileged because a conflict exists between Hampton and Union Pacific, and the communications should be disclosed pursuant to the joint client exception to the attorney-client privilege.

Union Pacific's intentional withholding of discoverable witness statements without the timely assertion of attorney-client privilege or a motion for protection

has waived its attempt to resist disclosure of Hampton and Wilson's witness statements.

Last, Union Pacific's failure to comply with the respondent's order to provide the recorded statements for *in camera* inspection precludes Union Pacific from seeking extraordinary mandamus relief because it cannot possibly show the respondent abused his discretion.

## ARGUMENT

### I.   STANDARD OF REVIEW

Mandamus relief is available only to correct a clear abuse of discretion when there is no adequate remedy by appeal. *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex.1992) (orig. proceeding). A trial court clearly abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex. 1985). This standard, however, has different applications in different circumstances.

On factual issues or matters committed to the trial court's discretion, the reviewing court may not substitute its judgment for that of the trial court. *Walker*, 827 S.W.2d at 840. The relator must establish that the trial court could reasonably have reached only one decision. *Id.* Even if the reviewing court would have

6

decided the issue differently, it should not disturb the trial court's decision unless it is shown to be arbitrary and unreasonable. *Id.*

## II. THE ATTORNEY-CLIENT PRIVILEGE IS CONSTRUED NARROWLY AND THE BURDEN OF DEMONSTRATING ITS APPLICABILITY IS CARRIED BY ITS PROPONENT.

"Mandamus is an extraordinary remedy, available only in limited circumstances." *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (quoting *Walker*, 827 S.W.2d at 840). It is "*an extreme measure* to be utilized only when there has been a violation of a clear legal right possessed by the relator and when there is a clear legal duty to act on behalf of the respondent." *Gordon v. Blackmon*, 675 S.W.2d 790, 792-93 (Tex. App.—Corpus Christi 1984, orig. proceeding) (emphasis added) (citing *Neville v. Brewster*, 163 Tex. 155, 352 S.W.2d 449 (1961); *Pat Walker & Co. v. Johnson*, 623 S.W.2d 306 (Tex. 1981)). Consequently, the relator bears the "heavy burden" of showing that the respondent clearly abused his discretion and that there is no adequate remedy by appeal. *Wittig*, 876 S.W.2d at 305.

Relator has failed to clear this hurdle. There is no manifest abuse of discretion in the respondent's order compelling the production of the recorded witness statements of Hampton and Wilson taken during the post-accident investigation Union Pacific held two days after the accident simply because Rothman was present during the investigation. Rothman instructed Green to

7

interview Hampton and Wilson while she sat in the same room and listened to what "their impressions were at the time of how the accident had occurred." Simply put, Union Pacific cannot meet its burden of establishing the witness statements were confidential communications made for the purpose of facilitating the rendition of professional legal services rather than mere factual recitations of the accident. [MR: 120]. Additionally, Union Pacific cannot show, nor does the record establish, that the subject matter upon which Rothman's advice was sought was related to Hampton and Wilson's performance as employees. Union Pacific, as the party resisting discovery, cannot meet its burden of demonstrating the applicability of any claimed attorney-client privilege. *See Huie v. DeShazo*, 922 S.W.2d 920, 926 (Tex. 1996) (citing *State v. Lowry*, 802 S.W.2d 669, 671 (Tex. 1991)).

Because it tends to prevent full disclosure of the truth, Texas courts narrowly construe application of the attorney-client privilege. *U.S. Ins. Group v. Lloyd*, 01-90-00754-CV, 1990 WL 238301, at *2 (Tex. App.—Houston [1st Dist.] Dec. 12, 1990, no writ); *Tex. Dep't of Mental Health & Mental Retardation v. Davis*, 775 S.W.2d 467, 473 (Tex. App.—Austin 1989, no writ). Texas Rule of Evidence 503 provides that a client may prevent the disclosure of confidential communications which were made to facilitate the rendition of professional legal services to the client. *See* TEX. R. EVID. 503. The elements of the attorney-client privilege are:

8

(1) a confidential communication; (2) made for the purpose of facilitating the rendition of professional legal services; (3) between or amongst the client, lawyer, and their representatives; and (4) the privilege has not been waived. *See* Tex. R. Evid. 503(b); *Huie*, 922 S.W.2d 920, 923. These elements can be established by affidavit, live testimony, or an *in camera* inspection of the documents. *See MessagePhone, Inc. v. SVI Sys.,* 1998 WL 874945, at *1 (N.D. Tex. Dec. 8, 1998) (Kaplan, M.J.) (citing *Varo, Inc. v. Litton Sys.*, 129 F.R.D. 139, 141-42 (N.D. Tex. 1989)). Here, they have not been established at all.

### III. UNION PACIFIC MUST PROVE THE WITNESS STATEMENTS WERE MADE FOR THE PURPOSE OF FACILITATING THE RENDITION OF LEGAL SERVICES TO THE CLIENT.

There is no clear abuse of discretion in the respondent's determination that Hampton and Wilson's witness statements should be disclosed. Union Pacific did not satisfy its burden to demonstrate that the witness statements were made in furtherance of rendering "professional legal services." *See* Tex. R. Evid. 503. *See, e.g., In re W & G Trucking, Inc.*, 990 S.W.2d 473, 475 (Tex. App.—Beaumont 1999, orig. proceedings) (finding document was not a privileged confidential communication because it was not made for purpose of rendering legal services where defendant gave statement to insurance investigator, but there was no evidence the statement was taken specifically to facilitate rendering of legal services, despite the fact that the insurance agency had reason to anticipate

9

litigation); *In re Learjet, Inc.*, 59 S.W.3d 842, 845-846 (Tex. App.—Texarkana 2001, orig. proceeding) (videotapes of attorney asking purely factual questions of client's employees for the purpose of presenting videotaped answers as information at mediation hearing are not protected by attorney-client privilege because they were not made for the purposes of rendering legal services); *see also* FED. R. EVID. 503, Adv. Comm. Note ("[C]ommunications must be specifically for the purposes of obtaining legal services for the client; otherwise the privilege does not attach.").

Prior to the respondent's *in camera* review of the recorded witness statements, he clearly and correctly articulated the attorney-client privilege does not apply unless the communications actually facilitate the rendition of legal services:

> THE COURT: Especially if the statement is nothing more than a factual rendition of what happened at the time of the wreck and doesn't include any statements by counsel or, you know, assertions on how someone should testify or any—really any—any attorney-client—if it doesn't include any attorney-client confidential information, it's just a recitation of, you know, what was the street like at the time of the accident or things like that, then—then I don't necessarily think it's going to be that burdensome to get ready for the deposition.

[RRIP: 56].

While the Trichels do not have the benefit of reviewing Hampton and Wilson's statements in preparation of this response, Relator's petition describes the

10

witness statements as "accounts of the events surrounding the accident," and Rothman's affidavit characterizes the purposes of the witness statements as a means to hear how the accident occurred. [*See* Petition for Writ of Mandamus at 2; RR 120]. After the *in camera* review of the witness statement transcripts, the respondent determined Union Pacific did not meet its burden of establishing Rothman was rendering legal services. The respondent correctly recognized the rendition of legal services is a critical and necessary element for the attorney-client privilege to attach, and properly ordered the immediate production of the recorded witness statements and transcripts when he determined Union Pacific did not meet its burden of proof.

Rothman's presence during Hampton and Wilson's witness statements does not automatically render the witness statements privileged communications. Union Pacific cannot cloak a material fact with the privilege merely by communicating it in the presence of an attorney. *Huie*, 922 S.W.2d at 923; *see, e.g., Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 199 (Tex. 1993). Rothman's affidavit states she simply listened to Hampton and Wilson's statements to hear their impressions of how the accident occurred. [MR: 120]. While Rothman vaguely alleges in her affidavit that she provided legal services, the respondent also thoroughly evaluated the witness statements *in camera* before concluding the witness statements were not privileged communications. Union Pacific has not offered a shred of actual

11

evidence that Rothman's presence at Hampton and Wilson's witness statements was anything more than investigatory.

The Texarkana Court of Appeals squarely addressed an attorney's role as an investigator in *In re Texas Farmers Ins. Exch.*, 990 S.W.2d 337 (Tex.App.—Texarkana 1999, no pet.):

> However, although the attorney-client privilege would apply to communications between Scott and Farmers concerning legal strategy, assessments, and conclusions, <u>the privilege does not operate as a blanket privilege covering all of the communications between the two. For instance, the privilege would not apply to those communications concerning bare facts</u>. If we were to so hold, insurance companies could simply hire attorneys as investigators at the beginning of a claim investigation and claim privilege as to all the information gathered. This is not the intent of the privilege. Scott could answer questions in a deposition concerning facts gathered during the course of his investigation while he was acting as an investigator, but could claim the attorney-client privilege if asked to divulge his legal conclusions based upon those facts.

*Id*. at 341 (emphasis added).

Moreover, the simple fact that Union Pacific may have contemplated litigation at the time the recorded statements were given does not establish the recorded witness statements were made for the purpose of facilitating the rendition of legal advice. Union Pacific's claims representative alleges Union Pacific developed its anticipation of a lawsuit on the day of the accident (April 15, 2014) because of the "nature of the incident" and the constable at the accident scene "notified Union Pacific its driver would be ticketed." [MR: 108 and 115].

12

However, the fact that an accident has occurred is not sufficient to shield post-accident investigations from discovery. *Stringer v. Eleventh Court of Appeals*, 720 S.W.2d 801, 802 (Tex. 1986); *Brown & Root U.S.A., Inc. v. Moore*, 731 S.W.2d 137, 140 (Tex. App.—Houston [14th Dist.] 1987, no writ).

While Union Pacific also alleges it anticipated litigation on April 17, 2014— the same day the Trichels' counsel faxed their letter of representation to Union Pacific—Union Pacific and Rothman acknowledged reviewing and receiving the Trichels' letter of representation several days after the witness statements were given. [MR: 233]. Rothman clearly did not have the letter of representation when Green took Hampton and Wilson's statements. [MR: 120].

## IV. HAMPTON AND WILSON DO NOT QUALIFY AS REPRESENTATIVES OF UNION PACIFIC.

Relator attempts to misuse the attorney-client privilege in an effort to create an employee veil to shield Hampton and Wilson's recorded witness statement from disclosure. Under the subject-matter test, an employee's communication is deemed to be that of the corporation/client if: (1) the employee makes the communication at the direction of his superiors in the corporation; and (2) where the subject matter upon which the attorney's advice is sought by the corporation and dealt with in the communication is the performance by the employee of the duties of his employment. *In re Monsanto Co.*, 998 S.W.2d 917, 922-23 (Tex. App.—Waco 1999, no pet.); *Nat'l Tank*, 851 S.W.2d at 198 (quoting *Harper &*

13

*Row Publishers, Inc. v. Decker*, 423 F.2d 487, 491–92 (7th Cir. 1970), *aff'd per curiam*, 400 U.S. 348 (1971)).

Union Pacific did not meet its burden of establishing Hampton or Wilson were actually directed, or even requested, to attend any interview by any Union Pacific superior. [MR: 115-16; 120]. Neither Green's nor Rothman's affidavit establishes that Hampton and Wilson's witness statements were made at the direction of any corporate superior. [MR: 115-16; 120]. Union Pacific is silent with regard to who Wilson and Hampton's superiors are, and Green's affidavit fails to indicate how his position as a "claims supervisor" qualifies him as a superior for purposes of directing the two truck drivers to provide witness statements. [MR: 115-16]. Additionally, Rothman's request that Green take Hampton and Wilson's witness statements does not satisfy Union Pacific's burden because Rothman is also not Hampton and Wilson's superior.

Relator attempts to stretch the attorney-client privilege by characterizing Hampton and Wilson's witness statements as relating to their performance as truck drivers for Union Pacific. [MR: Petition for Mandamus p. 9]. But neither of Union Pacific's affidavits establishes the alleged privileged communications made were within the scope of the employee's duties. [MR: 115-16; 120]. Relator's argument also fails because Wilson's duties as a truck driver for Union Pacific are wholly unrelated to him witnessing the accident. Rothman's affidavit simply states

14

the purpose of Green's interview was so she could hear Hampton and Wilson's impression at that time of how the accident occurred. [MR: 120]. Green's affidavit is wholly silent with regard to how Hampton and Wilson's witness statements somehow address their duties as employees with Union Pacific. [MR: 115-16]. They do not. Consequently, Union Pacific cannot satisfy its burden of establishing Wilson and Hampton's witness statements relate to their duties as employees.

Union Pacific's affidavits wholly fail to identify Hampton and Wilson's duties or how those duties were the subject of an attorney-client communication. [MR: 115-16; 120]. The respondent did not abuse his discretion in ordering the production of Hampton and Wilson's statements because they are not Union Pacific's "representatives" meriting protection under the attorney-client privilege.

## V. IN PARTICULAR, WILSON WAS MERELY A UNION PACIFIC EMPLOYEE WHO WITNESSED AN ACCIDENT.

An examination of Wilson's witness statement independently illustrates the expansive definition of attorney-client privilege communications Union Pacific is asking this Court to adopt. Wilson was simply an eyewitness to the collision who happened to also be a truck driver employed by Union Pacific. [MR: 56]. At the time of the accident, Wilson was driving a truck immediately behind Hampton's truck. [MR: 56]. Wilson is not a party to this lawsuit, and his duties as a truck driver for Union Pacific are irrelevant to the case. [MR: 1-2]. Wilson provided

15

Green a recorded witness statement the same day Hampton provided his statement and in Hampton's presence. [MR: 115-16].

Relator seeks to prevent a discoverable witness statement from disclosure simply because Wilson worked for Union Pacific. As demonstrated above, Union Pacific cannot meet the subjective test to establish Wilson was a representative of Union Pacific for the purpose of rendering his witness statement privileged. Additionally, Union Pacific should not be permitted to use a witness's status as an employee to make privileged his interviews with an attorney. *See Huie*, 922 S.W.2d at 923; *Upjohn Co. v. United States*, 449 U.S. 383, 395-96 (1981) (a client cannot cloak relevant information with a privilege merely by communicating it to the attorney). Similarly, Wilson's witnessing of an accident is not in the "performance of his duties" as a truck driver for Union Pacific.

Wilson's driving is not in question in this litigation; however, Union Pacific insinuates Rothman provided legal services to Wilson because he was Mirandized after the accident. [MR: 108; 120]. Relator fails to disclose that Wilson was not Mirandized due to his performance as a truck driver for Union Pacific, but rather due to suspicion that he lied to Corporal Talbert after Hampton's accident. [MR: 80-81; 120]. Once again, Union Pacific failed to meet its burden of establishing Wilson was a representative of Union Pacific or Rothman's client.

16

The respondent did not abuse his discretion in determining Wilson's witness statement was not privileged.

There are three ways to discover this information. One is through Wilson's deposition; unfortunately, Wilson passed away while he was on the job for Union Pacific. [MR: 169-70]. Obviously, then, he is no longer available for deposition. Perhaps some of the information contained in Wilson's statement could be independently corroborated by Hampton and Wilson's cell phones; however, according to Union Pacific, Hampton's phone was wiped and Wilson's phone was stepped on by a horse. [RRIP: 65-95; 96-123; 317-319]. Third, Wilson's account of the accident is available in his recorded witness statement. Consequently, Wilson's recorded witness statement is a critical piece of evidence whose content is not available from any other source.

## VI. ANY COMMUNICATIONS BETWEEN UNION PACIFIC, HAMPTON AND WILSON WERE NOT CONFIDENTIAL.

The evidence before the respondent showed the recorded witness statements were not intended to be confidential. If the parties present conflicting evidence on the applicability of the privilege, the trial court's decision "must be deemed conclusive." *Cameron Cnty. v. Hinojosa*, 760 S.W.2d 742, 745 (Tex. App.—Corpus Christi 1988, orig. proceeding); *Gulf Oil Corp. v. Fuller*, 695 S.W.2d 769, 773 (Tex. App.—El Paso 1985, no writ). Further, a reviewing court has no authority to issue a writ of mandamus where an issue of fact exists. *Dikeman v.*

17

*Snell*, 490 S.W.2d 183, 187 (Tex. 1973).

Wilson's presence during Hampton's statement precluded any privilege assertion for Hampton's statement because he is an unrelated third party. Moreover, Union Pacific's failure to meet the subjective test highlights the fact that Wilson's presence during Hampton's statement compromises the application of the attorney-client privilege. The presence of a third person eliminates the intent for confidentiality on which the privilege rests. *In re JDN Real Estate-McKinney L.P.*, 211 S.W.3d 907, 922 (Tex. App.—Dallas 2006, orig. proceeding); *see In re Auclair*, 961 F.2d 65, 69 (5th Cir. 1992).

Additionally, Hampton's statements given to Union Pacific as an adverse defendant represented by the same counsel also defeats Union Pacific's claim of attorney-client privilege. *See* TEX. R. EVID. 503(d)(5). Hampton is a separately named defendant in this matter and was previously represented by Rothman—Union Pacific's counsel. [MR: 30-32]. It is undisputed that Rothman represented both Union Pacific and Hampton individually. [MR 30-32; 237-51]. Rothman continued to represent Hampton as his litigation counsel until shortly after his November 10, 2014 deposition. [RRIP: 1-8]. Even if the witness statements could be construed as attorney-client communications, because Hampton and Union Pacific were joint clients of Rothman, the respondent did not abuse his discretion by ordering the production of the witness statements. If there is controversy

18

between two clients represented by the same attorney, "there is no privilege . . . as to a communication relevant to a matter of common interest between two or more clients if the communication was made by any of them to a lawyer retained or consulted in common, **when offered in an action between or among the clients**." *In re JDN Real Estate—McKinney L.P.*, 211 S.W.3d 907, 922 (Tex. App.—Dallas 2006, pet. denied) (emphasis added); *see also* TEX. R. EVID. 503(d)(5) (noting that communications made by two or more clients to a lawyer retained in common are not privileged "when offered in an action between or among any of the clients").

The evidence is replete with examples demonstrating Hampton is a joint client of Rothman in this lawsuit for the common purpose of jointly attempting to defeat the Trichels' causes of action. [MR: 30-32; 237-51]. Rothman answered discovery on behalf of Hampton and Union Pacific, asserted objections on behalf of Hampton and Union Pacific, and held herself out as Hampton and Union Pacific's attorney. [MR: 237-51]. Rothman represented Hampton during his November 14, 2014 deposition before withdrawing as his counsel a week later. [MR: 150-151; 155; RRIP: 1-8].

Rothman withdrew as Hampton's counsel shortly after his deposition, and he has since obtained new counsel to represent him. [MR: 257-261; RRIP: 1-8, 54]. Thus, in addition to the fact that Hampton provided a witness statement to Union Pacific, Hampton was Rothman's separate client who is in an action with Union

19

Pacific. The witness statements were communications at issue between Hampton and Rothman, who was retained and consulted in common. And, the witness statements at issue were provided in an action between the Trichels, Union Pacific and Hampton. Consequently, if the witness statements are confidential communications, the Trichels met their burden establishing the joint client exception.

## VII. UNION PACIFIC WAIVED ITS CLAIM FOR PRIVILEGE WHEN IT KNOWINGLY WITHHELD THE WITNESS STATEMENTS FROM PRODUCTION.

Union Pacific knowingly withheld discoverable witness statements for a year and three months without providing any indication even of their existence to the Trichels. On July 2, 2014, Union Pacific answered the Trichels' request for disclosure, which included a request to disclose witness statements. [MR: 237-47]. On October 2, 2014, Union Pacific answered a request for production seeking "the audio records of all witness statement you have obtained in this matter." [MR: 248-51]. Yet Union Pacific did not disclose the existence of the audio recorded witness statements of Hampton and Wilson until Green's deposition. [RRIP: 45-49]. Nor did Union Pacific assert any objection or privilege, move for protection, provide any privilege log, or disclose it was withholding witness statements prior to Green's deposition.

20

Rule 194 requires parties to provide basic discovery of specifically enumerated categories of information upon request without asserting objections or privileges. *See* TEX. R. CIV. P. 194. Union Pacific was required to move for protection if it intended to claim any kind of privilege as to the witness statements. *See* TEX. R. CIV. P. 194, cmt. 1.

Additionally, Texas Rule of Civil Procedure 193.3 required Union Pacific to describe the withheld materials in a way that allowed the other parties to assess the applicability of the privilege. *See* TEX. R. CIV. P. 193.3. Union Pacific did not comply with the procedural safeguards to assert privilege for witness statements that are required to be produced in its responses to the request for disclosure. Instead, Union Pacific attempts to paint discoverable witness statements as privileged communications in a strained effort to justify its late disclosure and improper withholding of Hampton and Wilson's recoded statements.

As demonstrated above, Union Pacific's gathering of witness statements with Rothman listening in the same room are not privileged communications. Moreover, Union Pacific did not meet its burden establishing Hampton and Wilson's witness statements are exempt from disclosure. *See* Tex. R. Civ. P. 193.3(c). Respondent conducted an *in camera* inspection of the recorded statements and ordered their immediate production because they were discoverable. [RRIP: 63]. Consequently, Union Pacific did not meet its burden

21

establishing the witness statements respondent reviewed *in camera* concerned claims in this litigation or that the witness statements were for the legal defense of a specific claim asserted against Union Pacific.

Union Pacific disregarded its obligation to produced discoverable witness statements that it should have produced well over a year ago. Its intentional withholding of discovery effectively waived any claim for privilege, and the respondent did not err in overruling Union Pacific's late assertion of privilege and compelling the overdue production of the witness statements.

## VIII. RELATOR FAILED TO PROVIDE THE RESPONDENT WITH THE AUDIO TAPES OF THE WITNESS STATEMENTS IT SEEKS TO EXCLUDE FROM DISCOVERY.

Union Pacific requests extraordinary mandamus relief for two recorded witness statements that it failed to produce to the Respondent for *in camera* inspection. Union Pacific withheld the recorded witness statements from production for over a year and half—without providing any indication that they existed. Upon their late disclosure, and Union Pacific's late assertion of privilege, the respondent ordered an *in camera* review of the recorded witness statements:

> *THE COURT:* I understand. I'm just asking the question because I may listen to these tapes in camera --
>
> *MS. ROTHMAN:* Okay.
>
> *THE COURT:* -- and listen to the statements to determine whether or not I think that there's attorney-client privilege and parse through --

22

*MS. ROTHMAN:* We're fine with that.

*THE COURT:* **That's – that's what I want to do**. And I'm --

*MS. ROTHMAN:* And we have -- we have the transcripts. Let me just say this to your Honor.

*THE COURT:* Okay.

[RRIP: 47-48] (emphasis added).

\* \* \*

*THE COURT:* Well, I appreciate everything that I've gotten; and I'll take a look at the -- the statements. And if I determine that they're discoverable, I'll make the appropriate order. But I just want to take a look at them so --

*MS. ROTHMAN:* We'll get them to you.

[RRIP: 52]. Despite the Respondent specifically stating that he wanted to listen to the recorded statements, Union Pacific provided him a prepared transcript of the recorded witness statements without providing the recordings themselves. [RRIP: 62].

Neither the Trichels nor the respondent has had the benefit of comparing Union Pacific's unilaterally transcribed statements with the actual recorded witness statements. Relator has offered no evidence of who transcribed the recorded statements, whether the transcripts provided to the respondent accurately represent what was recorded on the audio witness statements, or why it failed to provide the respondent with the audio recorded statements it seeks to prevent from disclosure. No one but Union Pacific has any idea whether the transcription is even remotely

23

accurate. The respondent didn't. And neither does this Court. Nonetheless, Relator seeks to prevent the discoverability of the recorded witness statements without providing any court the opportunity to listen to the audio tapes of the statements *in camera*.

Even assuming Union Pacific's transcription of the recorded witness statements is true and correct (of which there is no evidence whatsoever), Union Pacific failed to comply with the respondent's order, and the respondent correctly determined based on the information presented by Union Pacific that the recorded witness statements were discoverable and must be produced. [MR: 262].

## CONCLUSION AND PRAYER

Because Relators have failed to show an abuse of discretion, the petition for writ of mandamus should be denied.

Respectfully submitted,

**MARTIN, DISIERE, JEFFERSON & WISDOM, L.L.P.**

By: */s/ Levon G. Hovnatanian*
    Levon G. Hovnatanian
    TBN: 10059825
    *hovnatanian@mdjwlaw.com*
    Dale Jefferson
    TBN: 10607900
    *jefferson@mdjwlaw.com*
    Raymond M. Kutch
    TBN: 24072195
    *kutch@mdjwlaw.com*
808 Travis, 20th Floor
Houston, Texas 77002

24

(713) 632-1700 – Telephone
(713) 222-0101 – Facsimile

**VB ATTORNEYS, PLLC**

By: */s/ Vuk S. Vujasinovice*
    Vuk S. Vujasinovic
    TBN:  00794800
    *Vuk@vbattorneys.com*
    Brian Beckcom
    TBN:  24012268
    *Brian@vbattorneys.com*
6363 Woodway Drive, Suite 400
Houston, Texas 77057
(713) 224.7800 – Telephone
(713) 224-7801 – Facsimile

ATTORNEYS FOR REAL PARTIES IN
INTEREST DONALD AND MARY
TRICHEL, INDIVIDUALLY AND AS NEXT
FRIENDS OF NICHOLAS TRICHEL

## CERTIFICATE OF COMPLIANCE

This is to certify that this computer-generated response to petition for writ of mandamus contains 5,206 words.

        */s/ Levon G. Hovnatanian*
        Levon G. Hovnatanian
        Dated:  November 24, 2015

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the above and foregoing response to petition for writ of mandamus has been forwarded to the individuals listed below, by the methods indicated, on this 24th day of November, 2015.

Kent Rutter
*kent.rutter@haynesboone.com*
Christina Crozier
*christina.crozier@haynesboone.com*
Andrew Guthrie
*andrew.guthrie@haynesboone.com*
HAYNES AND BOONE, LLP
1221 McKinney, Suite 2100
Houston, Texas 77010-2007

Marcy Lynn Rothman
*MRothman@krcl.com*
Daniel Guerra
*DGuerra@krcl.com*
KANE RUSSELL COLEMAN & LOGAN PC
919 Milam Street, Suite 2200
Houston, Texas 77002

*(via e-filing and e-mail)*
*(Attorneys for relator Union Pacific Railroad Company)*

Adolfo R. Rodriguez, Jr.
*jr@therodriguezfirm.com*
Wilson C. Aurbach
*waurbach@therodriguezfirm.com*
Christopher K. Rusek
*crusek@therodriguezfirm.com*
RODRIGUEZ LAW FIRM, P.C.
1700 Pacific Ave., Suite 3850
Dallas, Texas 75201

*(via e-filing and e-mail)*
*(Attorneys for real party in interest Jeremy Ray Hampton)*

The Honorable Kyle Carter
125TH DISTRICT COURT
201 Caroline, 10th Floor
Houston, Texas 77002

*(via e-filing)*
*(Respondent)*

*/s/ Levon G. Hovnatanian*
Levon G. Hovnatanian

No. 01-15-00918-CV

---

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

---

**In Re UNION PACIFIC RAILROAD COMPANY,**

*Relator*

---

Original Proceeding from Cause No. 2014-23177
In the 125th District Court of Harris County, Texas

---

**REAL PARTIES IN INTEREST'S (DONALD AND MARY TRICHEL'S,
INDIVIDUALLY AND AS PERMANENT CO-GUARDIANS OF THE
PERSON AND ESTATE OF NICHOLAS TRICHEL, INCAPACITATED)
AFFIDAVIT FOR RECORD OF REAL PARTIES IN INTEREST**

---

**AFFIDAVIT OF VUK VUJASINOVIC**

STATE OF TEXAS

COUNTY OF HARRIS

BEFORE ME, the undersigned authority, on this day personally appeared

Vuk Vujasinovic, being by me duly sworn upon his oath, and he deposed and

stated as follows:

1.  My name is Vuk Vujasinovic. I am a resident of Harris County, Texas. I am over 21 years of age and have never been convicted of a felony or a crime involving moral turpitude, nor have I ever been adjudged incompetent.

2.  I am duly competent and qualified in all respects to make this affidavit and everything stated within this affidavit is within my personal knowledge.

3. I represent Plaintiffs Donald and Mary Trichel, Individually and as Permanent Co-Guardians of the Person and Estate of Nicholas Trichel, Incapacitated ("the Trichels") in Cause No. 2014-23177 in the 125th Judicial District Court of Harris County, Texas and in this mandamus proceeding in the First Court of Appeals. It is from my representation of the Trichels in the trial court that I have personal knowledge. I am authorized by the Trichels to make this affidavit. All matters stated therein are within my personal knowledge and are true and correct.

4. I have read Real Parties In Interest's (Donald and Mary Trichel's, Individually and as Permanent Co-Guardians of the Person and Estate of Nicholas Trichel, Incapacitated) Response to Petition for Writ of Mandamus and every factual statement contained in the response is within my personal knowledge and is true and correct and is supported by competent evidence included in the record.

5. The Record of Real Parties in Interest accompanies the response. I have personal knowledge from my representation of the Trichels in the trial court that every item in the Record of Real Parties in Interest is a true and correct copy of the original.

6. Additionally, I have personal knowledge from my attendance at the hearing on October 23, 2015 regarding the discoverability of the witness statements of Jeremy Hampton and James Wilson that the transcript of that hearing in the Record of Real Parties in Interest is true and correct.

FURTHER AFFIANT SAYETH NOT.

_____
Vuk Vujasinovic

SWORN TO AND SUBSCRIBED BEFORE ME on this 24th day of November, 2015.

_____



Notary Public in and for the State of Texas. My commission expires:

_____08-14-19_____

3